UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

**TRANSCEND SHIPPING SYSTEMS, LLC,**
*Plaintiff,*

v.

**CMA CGM (AMERICA) LLC AND
CMA CGM S.A.,**
*Defendants.*

**Case No. 6:21-cv-**0018

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against CMA CGM S.A. and CGM CGA (America) LLC, (collectively "Defendants"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.  Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

2.  Upon information and belief, CMA CGM S.A. is a limited liability company organized and existing under the laws of France with its principal office at 4, quai d'Arenc 13235 Marseille cedex 02 France.

3.  Upon information and belief, CMA CGM (America) is a limited liability company organized and existing under the laws of the State of New Jersey with its principal office at 5701 Lake Wright Drive, Norfolk, Virginia 23502. Upon information and belief, CMA CGM (America) LLC also maintains an office in Texas at 15350 Vickery Drive, Houston, Texas 77032.

## JURISDICTION AND VENUE

4.    Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

5.    The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over Defendants because they are present within or have minimum contacts within the State of Texas, including the Western District of Texas.

6.    Defendants have sought protection and benefit from the laws of the State of Texas; Defendants regularly conduct business within the State of Texas and within the Western District of Texas; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of Texas and in the Western District of Texas (*See* Figure 1 below).



Figure 1[1]

---

[1] Source, as visited on January 6, 2021:  https://www.cma-cgm.com/local/united-states/agency/762/cma-cgm-america-llc-houston?brand=cmacgm&fullName=False

7.     More specifically, Defendants, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Western District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, Defendants have committed patent infringement in the State of Texas and in the Western District of Texas. Defendants solicit and have solicited customers in the State of Texas and in the Western District of Texas. Defendants have paying customers, who are residents of the State of Texas and the Western District of Texas, who each use and have used the Defendants' products and services in the State of Texas and in the Western District of Texas.

8.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

9.     Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c)(3) because Defendant CMA CGM S.A. is not a resident of the United States and therefore may be sued in any judicial district.

**PATENTS-IN-SUIT**

10.     Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent"); 10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

11.     The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

12.     The Transcend Patents each include numerous claims defining distinct inventions.

13.     The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

14.     Plaintiff alleges infringement on the part of Defendants of each of the Transcend Patents.

15.     The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

16.     The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a

message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

17.     The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

18.     The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage; a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response

to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

19.     The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

20.     The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

21.    The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

22.    After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v) US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003, Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao; (xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii)

US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US 2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

23.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

24.   The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

25.   The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

26.   After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii)  US 6,046,678,

04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

27.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

28.    The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

29.    The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '029 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q 10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

30.    After conducting searches for prior art during the examination of the '029 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US 5,825,283, 10/1998, Camhi; (iii)   US 5,959,568, 09/1999, Woolley; (iv)  US 6,046,678,

04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US 6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954, 08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318, 06/2004, Jones; (xix) US 6,859,722, 02/2005, Jones; (xx) US 6,882,269, 04/2005, Moreno; (xxi) US 6,904,359, 06/2005, Jones; (xxii) US 7,035,856, 04/2006, Morimoto; (xxiii) US 7,085,775, 08/2006, Short et al.; (xxiv) US 7,212,829, 05/2007, Lau et al.; (xxv) US 2002/0046173, 04/2002, Kelly; (xxvi) US 2002/0061758, 05/2002, Zarlengo et al.; (xxvii) US 2002/0120475, 08/2002, Morimoto; and (xxviii) US 2002/0132855, 07/2003, Swan.

31.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

32.   The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

33.   The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '109 Patent, the United States Patent Examiner searched for

prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

34.    After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto; (iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

35.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

36.    The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

37.    The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

38.   After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

39.   After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '268 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

40.   The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

41.   The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form

the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

42.     The expiration dates of the Transcend Patents are at least the following: the '731 Patent expired on August 7, 2019 due to nonpayment of maintenance fees; the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 Patent expires no earlier than January 22, 2022; and the '268 Patent expires no earlier than January 22, 2022.

## ACCUSED INSTRUMENTALITIES

43.     Upon information and belief, Defendants sell, advertise, offer for sale, use, or otherwise provide smart containers including, but not limited, to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices ("Accused Instrumentalities") that infringe the Transcend Patents.

## COUNT I

## (Infringement of U.S. Patent No. 10,181,109)

44.     Plaintiff incorporates the above paragraphs by reference.

45.     Defendants have been on actual notice of the '109 Patent at least as early as the date it received service of this Original Complaint.

46.     On information and belief, Defendants own and control the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

47.   Upon information and belief, Defendants have directly infringed and continues to directly infringe at least claims 1, 8, 10, 13 and 14 of the '109 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

48.   Defendants, with knowledge of the '109 Patent, also infringe at least claims 1, 8, 10, 13 and 14 of the '109 Patent by inducing others to infringe the '109 Patent.   In particular, Defendants intend to induce its customers to infringe the '109 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

49.   Defendants also induce others, including its customers, to infringe at least claims 1, 8, 10, 13 and 14 of the '109 Patent by providing technical support for the use of the Accused Instrumentalities.

50.   Upon information and belief, Defendants make, use, sell and offer for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.   For example, Defendants provide smart containers including but not limited to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.   See Figures 2-9 below, which are screenshots of webpages associated with Defendants.



Figure 2[2]

---

[2] Source, as visited on January 14, 2020:  https://www.cmacgm-group.com/en/



Figure 3[3]



Figure 4[4]

---

[3] Source, as visited on January 7, 2021:  https://www.cmacgm-group.com/en/activities/shipping-everything/dry-cargo
[4] Source, as visited on January 14, 2020 https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers

## Smart technology for sustainable business

The future lies in sustainable business, whatever the scale or size, wherever it is in the world. At CMA CGM, we think outside the box to find solutions that improve the quality of our service as well as our carbon footprint. By minimizing our impact on the environment, we mitigate our customers' too, maximizing the value of their merchandise in the long run.

We have a huge range of containers in our fleet and the vast majority are eco-containers, made out of light steel, with bamboo floors and finished with solvent free paint. Our reefer fleet is the second largest in the world and all our refrigerated containers are now equipped with low consumption engines and energy management software to monitor temperature control and reduce wastage.

Today we are pushing the container revolution forward with TRAXENS and AQUAVIVA: two game-changing innovations that both make full use of modern technology and connectivity.

## TRAXENS: an innovative solution for container tracking



Figure 5[5]

---

[5] Source, as visited on January 14, 2020: https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers

**Smart Containers by TRAX≡NS**

CMA CMG was the first company to invest in the French Startup TRAXENS to help develop their connected containers. Today, TRAXENS is fast becoming the standard in the shipping world. Each unit is equipped with an electronic device that transmits the container's position and movements wherever it may be - at sea or on shore or inland.

TRAXENS can gauge the intensity of any potential shocks, sense the doors opening and closing and measure outside temperature variations. Very soon, the system will be able to measure the temperature and humidity levels inside each container too.

Thanks to near-real-time alerts, all our customers can track their merchandise and act swiftly and efficiently at every stage of the transport process. Offering unprecedented levels of visibility, security and control through an intuitive and user-friendly online interface updated in real time, TRAXENS is shipping supply chain management into the future.

Figure 6[6]

---

[6] Source, as visited on January 14, 2020: https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers

Figure 7[7]

---

[7] Source, as visited on January 7, 2021: https://www.cmacgm-group.com/en/innovation/smart-shipping



Figure 8[8]

[8] Source, as visited on January 7, 2021: https://www.cmacgm-group.com/en/activities/shipping-everything/dry-cargo



Figure 9[9]

51.     Upon information and belief, Defendants provide a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, Defendants' smart containers are installed with Traxens devices which include a GPS geo-spatial positioning device ("global positioning device") to determine a position or location of the smart container. Further, Defendants provide a web portal and a mobile application "CMA CGM" for Android and/or iOS to track and trace the

---

[9] Source, as visited on January 7, 2021: https://www.cmacgm-group.com/en/activities/shipping-everything/reefer

smart containers.  See Figures 10-13 below, which are screenshots of webpages associated with Defendants.



Figure 10[10]

---

[10] Source, as visited on January 14, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs



Figure 11[11]



Figure 12[12]

---

[11]  Source, as visited on January 14, 2020:  https://www.cma-cgm.com/products-services/ecommerce



Figure 13[13]

52.     Upon information and belief, Defendants provide a processor, wherein the processor generates a message in response to an occurrence of the event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device. For example, Defendants' smart containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited

---

[12]  Source, as visited on January 14, 2020: https://www.cma-cgm.com/products-services/ecommerce

[13]  Source, as visited on January 14, 2020: https://play.google.com/store/apps/details?id=com.csmartphone&hl=en

to, door, humidity, temperature and shock experienced by the shipping container. Therefore, Defendants provide a processor which processes information regarding the shipment conveyance device. As a further example, Defendants' smart containers, equipped with Traxens devices, detect an event including one or more of, but not limited to, deviation in temperature, theft, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, send alerts ("message") containing information about the event to the customers Defendants. These alerts are viewed in a dashboard provided by Defendants using Traxens-Hub. Therefore, Defendants provide a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, Defendants' smart containers, fitted with Traxens devices, measure information using sensors including one or more of, but not limited to, door sensor, humidity sensor, temperature sensor and shock sensor, and transmit information in the form of alerts to Defendants' customers after a request for information is received automatically. Therefore, Defendants provide a receiver which receives a request for information automatically. See Figure 10 above. See also Figures 14-18 below, which are screenshots of webpages associated with Defendants.



Figure 14[14]

[14] Source, as visited on January 7, 2021: https://www.cmacgm-group.com/en/activities/shipping-everything/reefer



Figure 15[15]



Figure 16[16]

---

[15]   Source, as visited on January 14, 2020: https://www.traxens.com/technology

[16]   Source, as visited on January 7, 2021: https://www.traxens.com/en/services



**TEMPERATURE AND HUMIDITY FLUCTUATION**

Monitor environmental attributes inside containers and other assets via remote sensors. Temperature and humidity values help you prevent cargo spoilage.

Figure 17[17]



**SHOCK DETECTION**

Our devices detect shock up to 200Gs. With a database of more than 400,000 shock events, our algorithm accurately assesses the severity of any shock to the container.





**DOOR OPENING**

To secure and guarantee cargo, we detect precisely when a door is opened or closed and links the event to the trip plan. Unexpected container openings trigger alerts, which aid teams in identifying cargo tampering or theft.

Figure 18[18]

53.    Upon information and belief, Defendants provide a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment

_____

[17]  Source, as visited on January 14, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

[18]  Source, as visited on January 14, 2020: https://www.traxens.com/en/services/data-that-suits-your-needs

conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, Defendants' smart containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to Defendants' customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, Defendants provide a transmitter for transmitting a message to a communication device associated with at least one of owner or an individual authorized to receive the message. See also Figures 19- below, which are screenshots of webpages associated with Defendants.



Figure 19[19]

---

[19] Source, as visited on January 14, 2020: https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers

**Smart Containers by TRAX∃NS**

CMA CMG was the first company to invest in the French Startup TRAXENS to help develop their connected containers. Today, TRAXENS is fast becoming the standard in the shipping world. Each unit is equipped with an electronic device that transmits the container's position and movements wherever it may be - at sea or on shore or inland.

TRAXENS can gauge the intensity of any potential shocks, sense the doors opening and closing and measure outside temperature variations. Very soon, the system will be able to measure the temperature and humidity levels inside each container too.

Thanks to near-real-time alerts, all our customers can track their merchandise and act swiftly and efficiently at every stage of the transport process. Offering unprecedented levels of visibility, security and control through an intuitive and user-friendly online interface updated in real time, TRAXENS is shipping supply chain management into the future.

Figure 20[20]



Figure 21[21]

---

[20]  Source, as visited on January 14, 2020: https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers
[21]  Source, as visited on January 14, 2020: https://www.traxens.com/



Figure 22[22]



Figure 23[23]

54.    Upon information and belief, Defendants provide a sensor, wherein the sensor monitors or

measures a temperature during a shipment or a transportation of the shipment conveyance

device, a shock exerted on the shipment conveyance device, an impact exerted on the

---

[22]  Source, as visited on January 14, 2020: https://www.traxens.com/technology
[23]  Source, as visited on January 14, 2020: https://www.traxens.com/technology

shipment conveyance device, or a force exerted on the shipment conveyance device. For example, Defendants' smart containers, equipped with Traxens devices, include a temperature sensor and shock sensor for measuring at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipping container during transportation. Therefore, Defendants' smart containers, fitted with Traxens devices, comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. See Figures 15 and 17-19 above. See also Figures 24 and 25 below, which are screenshots of webpages associated with Defendants.



Figure 24[24]

---

[24]  Source, as visited on January 14, 2020: https://www.cmacgm-group.com/en/activities/beyond-shipping/smart-containers



Figure 25[25]

55.   Upon information and belief, Defendants also provide a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, Defendants' smart containers, fitted with Traxens devices, transmit alerts ("message") related to temperature variations to a dashboard (provided through Traxens-Hub) used by Defendants' customers. Therefore, the message contains information regarding temperature of shipment and a change in shipment temperature. See Figures 10, 15, 17, 18, 24 and 25 above. See also Figure 26 below, which is a screenshot of a webpage associated with Defendants.

---

[25]   Source, as visited on January 7, 2021: https://www.traxens.com/en/services



Figure 26[26]

56.     Upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, Defendants' smart containers, equipped with Traxens devices, store geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, Defendants' smart containers, equipped with Traxens devices, detect events related to deviation from a pre-determined transportation route. See Figures 10 and 26 above.

57.     Upon information and belief, Defendants further provide an apparatus wherein the processor detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information.  For example, Defendants' smart container, equipped with Traxens devices, transmits alerts ("message") related to events including one or more of, but not limited to, theft, delay, deviation in

---

[26]  Source, as visited on January 14, 2020: https://www.traxens.com/

planned route, cargo impact, shock and damage. Based on these alerts, Defendants' customers file for an appropriate insurance claim to cover their losses. Upon information and belief, Defendants' smart container, equipped with Traxens devices, detects occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information. See Figures 27 and 28 below, which are screenshots of webpages associated with Defendants.



Figure 27[27]

---

[27]  Source, as visited on January 7, 2021: https://www.cnc-ebusiness.com/static/eCommerce/Attachments/Brochure_Insurance_EN_2016_web.pdf

Figure 28[28]

58.    To the extent Defendants continue, and have continued, their infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

59.    On information and belief, Defendants have a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendants instruct its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendants have been willfully blind to the patent rights of Plaintiff.

60.    Each of Defendants' aforesaid activities has been without authority and/or license from Plaintiff.

---

[28]  Source, as visited on January 7, 2021: https://www.cnc-ebusiness.com/products-services/cargo-insurance

## COUNT II

### (Infringement of U.S. Patent No. 9,847,029)

61.   Plaintiff incorporates the above paragraphs by reference.

62.   Defendants have been on actual notice of the '029 Patent at least as early as the date it received service of this Original Complaint.

63.   On information and belief, Defendants own and control the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

64.   Upon information and belief, Defendants have directly infringed and continues to directly infringe at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

65.   Defendants, with knowledge of the '029 Patent, also infringe at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by inducing others to infringe the '029 Patent.   In particular, Defendants intend to induce its customers to infringe the '029 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

66.   Defendants also induce others, including its customers, to infringe at least Claims 2, 12, 15, 18 and 19 of the '029 Patent by providing technical support for the use of the Accused Instrumentalities.

67.   As described above (*see* ¶ 50), and upon information and belief, Defendants make, use, sell and offer for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.   For example, Defendants provide smart containers including but not limited to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping

and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

68.    As described above (*see* ¶ 51), and upon information and belief, Defendants provide a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, Defendants' smart containers are installed with Traxens devices which include a GPS geo-spatial positioning device ("global positioning device") to determine a position or location of the smart container. Further, Defendants provide a web portal and a mobile application "CMA CGM" for Android and/or iOS to track and trace the smart containers.

69.    As described above (*see* ¶ 52), and upon information and belief, Defendants also provide a processor, wherein the processor processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.  For example, Defendants' smart containers are fitted with the Traxens devices ("processing device") which measure information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container and therefore, Defendants provide a processor which processes information regarding the shipment conveyance device. Further, Defendants' smart containers, equipped with Traxens devices, detect an event including one or more of, but not limited to, deviation in temperature, theft, unauthorised use, delay, deviation in planned route, cargo impact, shock and damage and in

response to the detected event, send alerts ("message") containing information about the event to the customers of Defendants. These alerts are viewed in a dashboard provided by Defendants using Traxens-Hub. Therefore, Defendants provide a processor which generates a message in response to occurrence of an event or in response to a request for the information regarding the shipment conveyance device.

70.    As described above (*see* ¶ 53), and upon information and belief, Defendants provide a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.   For example, Defendants' smart containers ("shipment conveyance device"), fitted with the Traxens devices, send information ("message") including one or more of, but not limited to, location, shock, door status, temperature and humidity, to Defendants' customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, Defendants provide a transmitter for transmitting a message to a communication device associated with at least one of owner, receiver or an individual authorized to receive the message.

71.    As described above (*see* ¶ 54), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.   For example, Defendants' smart containers, equipped with Traxens devices, include a temperature sensor and shock sensor for measuring at least one or more of,

but not limited to, temperature, shock, impact and force experienced by the shipping container during transportation. Therefore, Defendants' smart containers, fitted with Traxens devices, comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

72.    As described above (*see* ¶ 55), and upon information and belief, Defendants also provide a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.   For example, Defendants' smart containers, fitted with Traxens devices, transmit alerts ("message") related to temperature variations to a dashboard (provided through Traxens-Hub) used by Defendants' customers. Therefore, the message contains information regarding temperature of shipment and a change in shipment temperature. Further, Defendants' smart containers, fitted with Traxens devices, measure information including one or more of, but not limited to, shock, motion, impact and force experienced by the shipping container. Therefore, Defendants provide a message which contains information regarding an impact or force exerted on the shipment conveyance device

73.    As described above (*see* ¶ 56), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.   For example, Defendants' smart containers, equipped with Traxens devices, store geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore,

Defendants' smart containers, equipped with Traxens devices, detect events related to deviation from a pre-determined transportation route.

74.   As described above (*see* ¶ 57), and upon information and belief, Defendants further provide an apparatus wherein the processor detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information. For example, Defendants' smart container, equipped with Traxens devices, transmits alerts ("message") related to events including one or more of, but not limited to, theft, delay, deviation in planned route, cargo impact, shock and damage. Based on these alerts, Defendants' customers file for an appropriate insurance claim to cover their losses. Upon information and belief, Defendants' smart container, equipped with Traxens devices, detects occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information.

75.   To the extent Defendants continue, and have continued, their infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

76.   On information and belief, Defendants have a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendants instruct its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendants have been willfully blind to the patent rights of Plaintiff.

77.   Each of Defendants' aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT III

## (Infringement of U.S. Patent No. 7,482,920)

78.     Plaintiff incorporates the above paragraphs by reference.

79.     Defendants have been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

80.     On information and belief, Defendants own and control the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

81.     Upon information and belief, Defendants have directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

82.     Defendants, with knowledge of the '920 Patent, also infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by inducing others to infringe the '920 Patent.  In particular, Defendants intend to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

83.     Defendants also induce others, including its customers, to infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

84.     As described above (*see* ¶ 50), and upon information and belief, Defendants make, use, sell and offer for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, Defendants provide smart containers including but not limited to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

85.     Upon information and belief, Defendants provide a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For example, Defendants' smart containers are fitted with the Traxens devices (including a memory device) which comprise sensors, including but not limited to, temperature sensor, humidity sensor, door sensor and shock sensor. Further, Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants' container (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants' customer (since it communicates position of the container

and measurements from the sensors present on cargo and container including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub and Defendants (who may have multiple customers availing Defendants' services at any given time) correlates the information to the particular customer in order to provide updates to the customer), and therefore stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores at least a description of a good, product, or item, being shipped via the shipment conveyance device, because it identifies the position/location and sends the measurements from sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor, of each individual shipment to the Traxens-Hub and/or the Defendants' customer (who may have multiple shipments in transit at a given time). Further, Defendants' smart container, equipped with Traxens devices, stores measurements from one or more of door sensor, humidity sensor, temperature sensor and shock sensor, and therefore stores a description of a good, product, or item, being shipped via the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipment deviates from the planned route. Therefore, Defendants' smart container, equipped with Traxens devices, stores at least destination information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores measurements and alerts regarding shock, temperature, humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance device. See Figures 7, 10 and 14-20 above.

86.   As described above (*see* ¶ 51), and upon information and belief, Defendants provide a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.   For example, the smart containers are installed with Traxens devices which include a GPS geo-spatial positioning device ("global positioning device") to determine a position or location of the smart container. Further, Defendants provides a web portal and a mobile application "CMA CGM" for Android and/or iOS in which its customers track and trace their shipments.

87.   As described above (*see* ¶ 52), and upon information and belief, Defendants also provide a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.   For example, Defendants' smart container, fitted with the Traxens devices (including a processing device), measures information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container. Therefore, Defendants' smart containers comprise a processing device which processes information regarding the shipment conveyance device. Further, Defendants' smart container, fitted with Traxens devices, detects an event including one or more of, but not limited to, deviation in temperature, load-loss, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, sends alerts ("message") containing information about

the event to the customers of Defendants. Further, Defendants utilize Traxens-Hub to provide its customers a dashboard to track their shipments and view information and alerts ("message") regarding the shipment as well as the shipment conveyance device. Therefore, Defendants provide a message containing location of the shipment conveyance device and at least one or more of occurrence of event, status of the shipment, transportation of shipment conveyance device, shipment temperature, and impact or force experienced by the shipment conveyance device.

88.     As described above (*see* ¶ 53), and upon information and belief, Defendants provide a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.   For example, Defendants' smart container, fitted with the Traxens devices, sends information ("message") including one or more of, but not limited to, door, humidity, temperature and shock, to Defendants' customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, Defendants provide a transmitter for transmitting a message to a communication device associated with at least one of an individual, entity, sender of shipment conveyance device, receiver of shipment conveyance device and carrier of shipment conveyance device.

89.     As described above (*see* ¶ 54), and upon information and belief, Defendants provide a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment

conveyance device.  For example, Defendants' smart container, fitted with Traxens devices, includes a temperature sensor for measuring temperature in the container and a shock sensor for measuring shock, impact and force experienced by the shipping container during transportation. Therefore, Defendants' smart container comprises sensors that monitor and measure temperature, shock, impact and force experienced by the shipment conveyance device.

90.    As described above (*see* ¶ 55), and upon information and belief, Defendants also provide a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, Defendants' smart container, fitted with Traxens devices, transmits alerts ("message") related to temperature deviations to a dashboard (provided through Traxens-Hub) used by Defendants' customers. Therefore, the message contains information regarding temperature of shipment and a change in shipment temperature. Further, Defendants' smart container, fitted with Traxens devices, measures information including shock, motion, impact and force experienced by the shipping container. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

91.    As described above (*see* ¶ 56), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.  For example, Defendants' smart containers, equipped with Traxens devices, store geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore,

Defendants' smart containers, equipped with Traxens devices, detect events related to deviation from a pre-determined transportation route.

92.    Upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement. For example, Defendants' smart containers, equipped with Traxens devices, transmit alerts related to temperature deviations inside a container to Defendants' customers, and therefore, detect events including, but not limited to, deviation in shipment temperature. See Figures 15-17 and 24 above.

93.    Upon information and belief, Defendants further provide an apparatus wherein the event is a detection of an impact experienced by the shipment conveyance device, a mishandling of the shipment conveyance device, a dropping of the shipment conveyance device, and an accident involving the shipment conveyance device.   For example, Defendants' smart container, equipped with Traxens device, detects an event including tampering of cargo, deviation in temperature, load-loss, theft, delay, and deviation in planned route, cargo impact, shock and damage experienced by the shipping container. Therefore, Defendants' smart container, equipped with Traxens devices, detects events including an impact, a force, a mishandling, a dropping and an accident experienced by the shipment conveyance device. See Figures 16, 18 and 25 above.

94.    As described above (*see* ¶ 57), and upon information and belief, Defendants further provide an apparatus wherein the processing device detects an occurrence giving rise to an insurance claim regarding the shipment conveyance device, and further wherein the message includes insurance claim information. For example, Defendants' smart container, equipped with Traxens devices, transmits alerts ("message") related to events including one or more of, but

not limited to, theft, delay, deviation in planned route, cargo impact, shock and damage. Based on these alerts, Defendants' customers file for an appropriate insurance claim to cover their losses. Upon information and belief, Defendants' smart container, equipped with Traxens devices, detects occurrences giving rise to an insurance claim regarding the shipment and transmits messages including insurance claim information.

95.   To the extent Defendants continue, and have continued, their infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

96.   On information and belief, Defendants have a policy or practice of not reviewing the patents of others.  Further on information and belief, Defendants instruct its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Defendants have been willfully blind to the patent rights of Plaintiff.

97.   Each of Defendants' aforesaid activities has been without authority and/or license from Plaintiff.

## **COUNT IV**

### **(Infringement of U.S. Patent No. 10,796,268)**

98.   Plaintiff incorporates the above paragraphs by reference.

99.   Defendants have been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

100.   On information and belief, Defendants own and control the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

101. Upon information and belief, Defendants have directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

102. Defendants, with knowledge of the '268 Patent, also infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, Defendants intend to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

103. Defendants also induce others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

104. As described above (*see* ¶ 50), and upon information and belief, Defendants make, use, sell and offer for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, Defendants provide smart containers including but not limited to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

105. As described above (*see* ¶ 51), and upon information and belief, Defendants provide a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, the smart containers are installed with Traxens devices which include a GPS geo-spatial positioning device ("global positioning device") to determine a position or location of the smart container. Further,

Defendants provides a web portal and a mobile application "CMA CGM" for Android and/or iOS in which its customers track and trace their shipments.

106. As described above (*see* ¶ 52), and upon information and belief, Defendants also provide a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.   For example, Defendants' smart container, fitted with the Traxens devices (including a processing device), measures information related to shipping container including one or more of, but not limited to, door, humidity, temperature and shock experienced by the shipping container. Therefore, Defendants' smart containers comprise a processing device which processes information regarding the shipment conveyance device. Further, Defendants' smart container, fitted with Traxens devices, detects an event including one or more of, but not limited to, deviation in temperature, load-loss, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, sends alerts ("message") containing information about the event to the customers of Defendants. Further, Defendants utilize Traxens-Hub to provide its customers a dashboard to track their shipments and view information and alerts ("message") regarding the shipment as well as the shipment conveyance device. Therefore, Defendants provide a message containing location of the shipment conveyance device and at least one or more of occurrence of event, status of the shipment, transportation of shipment conveyance device, shipment temperature, and impact or force experienced by the shipment conveyance device.

107.   As described above (*see* ¶ 53), and upon information and belief, Defendants provide a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.   For example, Defendants' smart container, fitted with the Traxens devices, sends information ("message") including one or more of, but not limited to, door, humidity, temperature and shock, to Defendants' customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, Defendants provide a transmitter for transmitting a message to a communication device associated with at least one of an individual, entity, sender of shipment conveyance device, receiver of shipment conveyance device and carrier of shipment conveyance device.

108.   As described above (*see* ¶ 54), and upon information and belief, Defendants provide a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.   For example, Defendants' smart container, fitted with Traxens devices, includes a temperature sensor for measuring temperature in the container and a shock sensor for measuring shock, impact and force experienced by the shipping container during transportation. Therefore, Defendants' smart container comprises sensors that monitor and measure temperature, shock, impact and force experienced by the shipment conveyance device.

109. As described above (*see* ¶ 55), and upon information and belief, Defendants also provide a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.   For example, Defendants' smart container, fitted with Traxens devices, transmits alerts ("message") related to temperature deviations to a dashboard (provided through Traxens-Hub) used by Defendants' customers. Therefore, the message contains information regarding temperature of shipment and a change in shipment temperature. Further, Defendants' smart container, fitted with Traxens devices, measures information including shock, motion, impact and force experienced by the shipping container. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

110. As described above (*see* ¶ 56), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, Defendants' smart containers, equipped with Traxens devices, store geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, Defendants' smart containers, equipped with Traxens devices, detect events related to deviation from a pre-determined transportation route.

111. To the extent Defendants continue, and have continued, their infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

112. On information and belief, Defendants have a policy or practice of not reviewing the patents of others. Further on information and belief, Defendants instruct its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendants have been willfully blind to the patent rights of Plaintiff.

113. Each of Defendants' aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT V

### (Infringement of U.S. Patent No. 7,253,731)

114. Plaintiff incorporates the above paragraphs by reference.

115. Defendants have been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

116. On information and belief, Defendants own and control the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

117. Upon information and belief, Defendants have directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

118. Defendants, with knowledge of the '731 Patent, also infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '731 Patent by inducing others to infringe the '731 Patent. In particular, Defendants intend to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

119. Defendants also induce others, including its customers, to infringe at least Claims 1, 5, 9, 11, 12, 14 and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

120. As described above (*see* ¶ 50), and upon information and belief, Defendants make, use, sell and offer for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, Defendants provide smart containers including but not limited to Reefer Cargo, Dry Cargo and/or Special Cargo (each being a "shipment conveyance device") for shipping and/or delivering goods, products, items, and/or other objects which are installed with Traxens devices.

121. As described above (*see* ¶ 85), and upon information and belief, Defendants provide a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For example, Defendants' smart containers are fitted with the Traxens devices (including a memory device) which comprise sensors, including but not limited to, temperature sensor, humidity sensor, door sensor and shock sensor. Further, Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further,

Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants' container (since it communicates position of the container and measurements from the sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub), and therefore stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores at least an identification of Defendants' customer (since it communicates position of the container and measurements from the sensors present on cargo and container including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor to Traxens-Hub and Defendants (who may have multiple customers availing Defendants' services at any given time) correlates the information to the particular customer in order to provide updates to the customer), and therefore stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores at least a description of a good, product, or item, being shipped via the shipment conveyance device, because it identifies the position/location and sends the measurements from sensors including but not limited to door sensor, humidity sensor, temperature sensor and shock sensor, of each individual shipment to the Traxens-Hub and/or the Defendants' customer (who may have multiple shipments in transit at a given time). Further, Defendants' smart container, equipped with Traxens devices, stores measurements from one or more of door sensor, humidity sensor, temperature sensor and shock sensor, and therefore stores a description of a good, product, or item, being shipped via the shipment conveyance device. Further, Defendants' smart container, equipped

with Traxens devices, stores geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipment deviates from the planned route. Therefore, Defendants' smart container, equipped with Traxens devices, stores at least destination information regarding the shipment conveyance device. Further, Defendants' smart container, equipped with Traxens devices, stores measurements and alerts regarding shock, temperature, humidity and other handling parameters – and therefore stores at least handling instruction information for the shipment conveyance device.

122.   As described above (*see* ¶ 51), and upon information and belief, Defendants provide a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, the smart containers are installed with Traxens devices which include a GPS geo-spatial positioning device ("global positioning device") to determine a position or location of the smart container. Further, Defendants provides a web portal and a mobile application "CMA CGM" for Android and/or iOS in which its customers track and trace their shipments.

123.   As described above (*see* ¶ 52), and upon information and belief, Defendants also provide a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.  For example, Defendants' smart container, fitted with the Traxens devices (including a processing device), measures information related to shipping container including one or more of, but not limited

to, door, humidity, temperature and shock experienced by the shipping container. Therefore, Defendants' smart containers comprise a processing device which processes information regarding the shipment conveyance device. Further, Defendants' smart container, fitted with Traxens devices, detects an event including one or more of, but not limited to, deviation in temperature, load-loss, delay, deviation in planned route, cargo impact, shock and damage and in response to the detected event, sends alerts ("message") containing information about the event to the customers of Defendants. Further, Defendants utilize Traxens-Hub to provide its customers a dashboard to track their shipments and view information and alerts ("message") regarding the shipment as well as the shipment conveyance device. Therefore, Defendants provide a message containing location of the shipment conveyance device and at least one or more of occurrence of event, status of the shipment, transportation of shipment conveyance device, shipment temperature, and impact or force experienced by the shipment conveyance device.

124. As described above (*see* ¶ 53), and upon information and belief, Defendants provide a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, Defendants' smart container, fitted with the Traxens devices, sends information ("message") including one or more of, but not limited to, door, humidity, temperature and shock, to Defendants' customers. As a result, the customers monitor their shipments present in the shipping containers using a dashboard/portal (provided through Traxens-Hub). Therefore, Defendants provide a transmitter for transmitting a message to a communication device

associated with at least one of an individual, entity, sender of shipment conveyance device, receiver of shipment conveyance device and carrier of shipment conveyance device.

125.    As described above (*see* ¶ 54), and upon information and belief, Defendants provide a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.  For example, Defendants' smart container, fitted with Traxens devices, includes a temperature sensor for measuring temperature in the container and a shock sensor for measuring shock, impact and force experienced by the shipping container during transportation. Therefore, Defendants' smart container comprises sensors that monitor and measure temperature, shock, impact and force experienced by the shipment conveyance device.

126.    As described above (*see* ¶ 55), and upon information and belief, Defendants also provide a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, Defendants' smart container, fitted with Traxens devices, transmits alerts ("message") related to temperature deviations to a dashboard (provided through Traxens-Hub) used by Defendants' customers. Therefore, the message contains information regarding temperature of shipment and a change in shipment temperature. Further, Defendants' smart container, fitted with Traxens devices, measures information including shock, motion, impact and force experienced by the shipping container. Therefore, the message contains information regarding an impact or force exerted on the shipment conveyance device.

127.   As described above (*see* ¶ 56), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device.   For example, Defendants' smart containers, equipped with Traxens devices, store geofencing parameters allowing Defendants and/or the customer to receive alerts if the shipping container deviates from the planned route. Therefore, Defendants' smart containers, equipped with Traxens devices, detect events related to deviation from a pre-determined transportation route.

128.   As described above (*see* ¶ 92), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement. For example, Defendants' smart containers, equipped with Traxens devices, transmit alerts related to temperature deviations inside a container to Defendants' customers, and therefore, detect events including, but not limited to, deviation in shipment temperature.

129.   As described above (*see* ¶ 93), and upon information and belief, Defendants further provide an apparatus wherein the event is a detection of at least one of an impact experienced by the shipment conveyance device, a force experienced the shipment conveyance device, a mishandling of the shipment conveyance device, a dropping of the shipment conveyance device, and an accident involving the shipment conveyance device.   For example, Defendants' smart container, equipped with Traxens device, detects an event including tampering of cargo, deviation in temperature, load-loss, theft, delay, and deviation in planned route, cargo impact, shock and damage experienced by the shipping container. Therefore, Defendants' smart container, equipped with Traxens devices, detects events including an

impact, a force, a mishandling, a dropping and an accident experienced by the shipment conveyance device.

130. To the extent Defendants continue, and have continued, their infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

131. On information and belief, Defendants have a policy or practice of not reviewing the patents of others. Further on information and belief, Defendants instruct its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Defendants have been willfully blind to the patent rights of Plaintiff.

132. Each of Defendants' aforesaid activities has been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Transcend respectfully requests the Court enter judgment against Defendants:

1. Declaring that Defendants have infringed each of the Transcend Patents;

2. Declaring that Defendants' infringement of each of the Transcend Patents has been willful and deliberate;

3. Awarding Transcend compensatory damages as a result of Defendants' infringement of the Transcend Patents;

4. Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendants' willful and deliberate infringement of the Transcend Patents;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants from further acts of infringement with respect to the Transcend Patents;

6.      Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.      Awarding Transcend ongoing post-trial royalties; and

8.      Granting Transcend such further relief as the Court finds appropriate.


## JURY DEMAND

Transcend demands trial by jury, under Fed. R. Civ. P. 38.


 Dated:  January 8, 2021                    Respectfully Submitted
                                            */s/ Randall T. Garteiser*
                                            Randall T. Garteiser
                                            Texas Bar No. 24038912
                                            rgarteiser@ghiplaw.com
                                            Thomas Fasone III
                                            Texas Bar No. 00785382
                                            tfasone@ghiplaw.com
                                            M. Scott Fuller
                                            Texas Bar No. 24036607
                                            sfuller@ghiplaw.com
                                            René A. Vazquez
                                            *Pro Hac Vice Anticipated*
                                            rvazquez@ghiplaw.com

                                            **GARTEISER HONEA, PLLC**
                                            119 W. Ferguson Street
                                            Tyler, Texas 75702
                                            Telephone: (903) 705-7420
                                            Facsimile: (903) 405-3999

                                            **ATTORNEYS FOR
                                            TRANSCEND LLC**